UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| BILLIE JEAN WILSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SENTRY INSURANCE, )<br>)<br>Intervening Plaintiff, )<br>)<br>v. )<br>)<br>ENGEL CANADA, INC., and )<br>UNKNOWN DEFENDANTS, )<br>)<br>Defendants. ) | Civil Case No.<br>5:11-cv-344-JMH-REW<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*

This matter is before the Court upon Defendant Engel Canada Inc.'s Motion for Summary Judgment. [D.E. 60]. Plaintiff Billie Jean Wilson filed a Response [D.E. 65][1], and Defendant filed a Reply. [D.E. 62]. Sentry Insurance, an Intervening Plaintiff, did not respond to the motion. The time for briefing having expired, and the Court being otherwise sufficiently advised, this matter is now ripe for review.

**I. Procedural Background**

Plaintiff began employment with Molding Solutions in September 2007. [D.E. 61-2 at 6]. At the time of Plaintiff's injury, her employment required her to operate a horizontal

---
[1] The Court granted Plaintiff's Motion for Leave to File a Corrected Response. [D.E. 64].

injection molding machine. [D.E. 60-1 at 3; 65 at 2]. This machine, a Repro 2000 P 34 W, [D.E. 61-3 at 15], was manufactured by Defendant Engel Canada, Inc. in 1989. [D.E. 60-1 at 3; 65 at 2]. The machine is designed so that it can reach the temperature of 400 degrees Fahrenheit and generate up to 100 tons of pressure. [D.E. 61-6 at 35-36]. The machine, as manufactured by Engel, does not include a mold that shapes a final product. [D.E. 61-3 at 16] ("Q: Does Engel also produce the molds that you're talking about? A: No, it doesn't."). Thus, it is the responsibility of the user to install a mold in the machine. [D.E. 61-4 at 10] ("I feel that Molding Solutions had some responsibility to -- for a number of things. Installing the mold is one of them.").

On September 28, 2010, Plaintiff's supervisor David Beckett was operating the control panel of the machine, attempting to make adjustments to the operating process of the machine. [D.E. 65 at 6]. Beckett was making these adjustments while Plaintiff continued with production. [D.E. 61-2 at 56] ("And then David came in and we worked together. He tells me what he wants me to do. . . . And then he's doing all this work over here, which I don't know."). After approximately an hour, [D.E. 61-2 at 57], and while Plaintiff's hand was in the machine, Beckett pressed a combination of buttons that caused the ejector plate on the machine to retract. [D.E. 65 at 6]. When the ejector plate

retracted, it pinched Plaintiff's left hand and trapped her hand inside the machine. [D.E. 61-4 at 29]. Plaintiff was only able to remove her hand from the machine after fellow Molding Solutions employees opened the machine with crowbars. [D.E. 61-2 at 57]. As a result, Plaintiff's hand was burned to the tendon [D.E. 61-2 at 64], and she continues to have trouble gripping with her left hand. [D.E. 61-2 at 64-66]. It is undisputed that when Plaintiff's injury occurred the machine was being operated in manual mode and the SPI safety override switch was in the "on" position. [D.E. 65 at 6].

Due to her injuries, Plaintiff filed suit in Fayette Circuit Court alleging claims based upon the products liability theories of manufacturing defect, defective design, failure to warn, and breach of express and implied warranties. [D.E. 1-1 at 2-4]. Defendant timely removed the action to this Court. [D.E. 1].

Prior to instituting this civil action, Plaintiff was awarded workers compensation benefits from Molding Solutions' insurance carrier, Sentry Insurance. [D.E. 10 at 1]. Pursuant to KRS 342.700, Sentry Insurance filed a Complaint as an Intervening Plaintiff seeking reimbursement for its expenses from Defendants. [D.E. 10].

**II. Standard of Review**

A motion for summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. Analysis**

Defendant's Motion for Summary Judgment as to the claims for manufacturing defect and defective design must be granted. Even assuming Defendant was negligent in the manufacture or design of the machine, the conduct of Molding Solutions, Plaintiff's employer, acts as a superseding cause of Plaintiff's injuries.[2]

---

[2] Defendant is entitled to a presumption that the machine was not defective, as the injury occurred more than 8 years after the date of manufacture. *See* KRS 411.310(1). Upon finding a superseding cause, the Court does not rely on the presumption

4

The actions of Plaintiff's employer, Molding Solutions, act as a superseding cause, cutting off potential liability for Defendant. Even after the adoption of comparative negligence, Kentucky courts have continued to apply the superseding cause analysis to negligence actions. *See, e.g.*, *Pile v. City of Brandenburg*, 215 S.W.3d 36, 42 (Ky. 2006) (finding that the doctrine of superseding cause had been "substantially diminished" by comparative negligence, but ultimately holding the tortious conduct of a third person did not qualify as a superseding cause); *see also James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 808 (W.D. Ky. 2000) (citing *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837-38 (1996)) ("The United States Supreme Court has held that the superseding cause doctrine is not inconsistent with the comparative fault doctrine."). "[A] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Briscoe v. Amazing Prods., Inc.*, 23 S.W.3d 228, 229 (Ky. Ct. App. 2000) (citations omitted) (internal quotation marks omitted).

> A superseding cause will possess the following attributes: 1) an act or event that intervenes between the original act and the injury; 2) the intervening

---

created by Kentucky statute, because Defendant could not be found liable even if Plaintiff presented evidence to rebut the presumption that the machine was not defective.

5

act or event must be of independent origin, unassociated with the original act; 3) the intervening act or event must, itself, be capable of bringing about the injury; 4) the intervening act or event must not have been reasonably foreseeable by the original actor; 5) the intervening act or event involves the unforeseen negligence of a third party or the intervention of a natural force; 6) the original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create a negligent condition or occasion; the distinction between a legal cause and a mere condition being foreseeability of injury.

*NKC Hosps., Inc. v. Anthony*, 849 S.W.2d 564, 568 (Ky. Ct. App. 1993). "The question of whether an undisputed act or circumstance was or was not a superseding cause is a legal issue for the court to resolve, and not a factual question for the jury." *House v. Kellerman*, 519 S.W.2d 380, 382 (Ky. 1974). The factual circumstances giving rise to Plaintiff's injuries are undisputed; thus, whether there is a superseding cause is a legal issue for the Court.

The most important of the characteristics set out in *Anthony* is foreseeability. *See Scruggs v. Sperian Fall Arrest Sys., Inc.*, No. 5:10-cv-26, 2011 WL 4744908, at *9 (W.D. Ky. Oct. 7, 2011) ("Whether the cause of action sounds in products liability . . . or in negligence . . . , all of the cases turn on the issue of foreseeability."). The actions of Molding Solutions were so extraordinary that its intervening acts and negligence were unforeseeable by Defendant.

6

First, Molding Solutions' operating procedure required the operator to operate the machine with the SPI safety override switch in the "on" position. [D.E. 61-5 at 35] ("So it was also determined during the testing that the employer's process instruction sheet could not be performed with the SPI override switch in the off position."). The SPI safety override switch "allows the clamp movement with an open gate in the open direction and the ejectors to come forward to allow the operator to physically get in there and catch a part or to remove a part manually and not interrupt the automatic cycle." [D.E. 61-3 at 47]. If the SPI safety override switch is in the "off" position, the production process cannot operate without the operating gate being closed, because opening the gate would trigger an emergency stop. [D.E. 61-6 at 33]. Hence, operating the machine with the SPI safety override switch in the "on" position negates safety features included in the manufacture and design of the machine.

Additionally, Plaintiff had her hands inside the machine while her supervisor was attempting to alter the operation process of the machine. [D.E. 61-2 at 56] ("And then he's doing all this work over here, which I don't know. I know he was trying to figure out – well, he's always after better production, you know, faster production."). Plaintiff testified that this occurred regularly. [D.E. 61-2 at 58] (Q: So did he

7

frequently manipulate the machine while your hands were in there with moving parts? A: Yes."). There is testimony from a Molding Solutions employee, Derek Farley, that this violated safety protocol.

> Q: Would you agree with me that it is unsafe to manipulate or push the buttons on the machine while someone has their hands inside the mold?
>
> A: Absolutely.
>
> Q: Would you agree with me that that is warned against on the machine and in the manual several times?
>
> A: Yes.

[D.E. 62-1 at 1]. Then, Farley continued:

> Q: Okay. Have you ever made changes or attempted to make changes to the programming of the machine while another employee had their hands inside the pinch points in the machine?
>
> A: Absolutely not.
>
> Q: Why not?
>
> A: Because it's unsafe.
>
> Q: And that's universally recognized in your industry, right?
>
> A: In my training, it is. I can't speak for others. . . .

[D.E. 62-1 at 2]; *see also* [D.E. 61-6 at 67] ("The machine is built for one operator, and safety regulations in place will restrict you to have an operator and maintenance personnel doing maintenance on the machine at the same time.").

8

Additionally, Molding Solutions designed the mold and altered the machine in a way that is not typical.

> A: Correct. And the ejector rods go through holes in the platen to push something inside the mold. In this case they've gone outside of that area. So they've extended the ejector plate to something outside of this platen. This is not normal.
>
> . . .
>
> Q: Okay. So I think you said it's not normal. What does that mean?
>
> A: Well, normal – to me, this is not the way the machine was designed. The machine was designed to have the ejector rods go through holes in the platen.
>
> Q: Okay. Have you seen other customers with a configuration similar to this configuration before?
>
> A: No, I've not.

[D.E. 61-3 at 19]. The parties do not "dispute the nature of Molding Solutions' [sic] installation of its mold into the Molding Machine," [D.E. 65 at 5], which includes the installation of the ejector rods. [D.E. 65 at 5]. The parties also do not dispute that this unusual design created the pinch point that injured Plaintiff. [D.E. 65 at 5] ("The parties do not dispute that the pinch point that trapped, crushed, and burned Ms. Wilson's hand was created by Molding Solutions' configuration of the mold."); *see also* [D.E. 61-3 at 50] ("Not – as far as the machine goes, yes, there are [no pinch points]. But with these rods sticking out, there are now pinch points.").

These actions on the part of Molding Solutions present a situation similar to that of *Sturm, Ruger Co. v. Bloyd*, a products liability action brought against a revolver manufacturer. 586 S.W.2d 19, 19 (Ky. 1979). The *Bloyd* court found that "[t]he manufacturer[ was] not a guarantor of the safety of the revolver. The evidence disclose[d] that the subject revolver was not unsafe when used in the normal and usual manner. The use to which [the gun was] put [was] contrary to the instructions." *Id.* at 21. Furthermore, "[t]he dangerous propensity of the revolver was a condition rather than a cause." *Id.* at 22. Thus, "[r]egardless of the design or manufacturing of the revolver, the use to which it was put was the agency that brought about the injury complained of." *Id.*

The *Bloyd* court found the actions of the third party unforeseeable because "[t]he manufacturer had no control over the gun. It was under the sole and exclusive control of Price, and his conduct in the handling of the revolver, as illustrated by the proof, was the substantial factor which caused the injury." *Bloyd*, 586 S.W.2d at 22.

Here, as in *Bloyd*, the machine was controlled by Molding Solutions. Molding Solutions conduct, specifically, the combination of the addition of ejector rods outside of the holes in the platen, the required operating procedure, and the actions of Plaintiff's supervisor, was the substantial factor that

caused Plaintiff's injury. This blatant disregard for the safety of its employees and of the safety protocols for using the machine was unforeseeable.

The actions of Molding Solutions were not only unforeseeable, but also meet the other characteristics of a superseding cause enunciated in *Anthony*. The actions of Molding Solutions occurred between production of the machine and Plaintiff's injury. Additionally, there can be no doubt that the actions of Molding Solutions were unassociated with the design or manufacture of the machine by Engel. The independent act could have caused the injury, as it is undisputed that Molding Solutions' alteration created the pinch point and Plaintiff's hand was trapped when a Molding Solutions employee caused the ejector plate to retract with Plaintiff's hand in the machine. Further, the intervening act involves negligence of a third party, Molding Solutions. Thus, the actions of Molding Solutions are a superseding cause and Defendant cannot be liable on the claims of manufacturing defect or design defect.

Plaintiff also brings a claim based upon a failure "to adequately warn users that the Machine had an inherently dangerous design." [D.E. 1-1 at 3]. The relevant warning on the machine stated the following:

> CAUTION
> Pinch points created by movements of cores and ejectors and by the opening of the mold may be exposed

>if the operator's gate is opened while the "SPI SAFETY OVERRIDE" keyswitch is turned in the "ON" position. DO NOT REACH INTO THESE PINCH POINTS. ASK YOUR SUPERVISOR FOR INSTRUCTIONS.

[D.E. 65 at 3; 60-1 at 4]. Plaintiff contends that the warning was inadequate for two reasons. First, that the warning "was too generalized to warn of the risk that injured" Plaintiff. [D.E. 65 at 7]. Second, that "by warning of the general risks associated with operating the Molding Machine with the SPI switch on, and neglecting the additional risks created by operating in manual mode, it misleads the user of the true risks." [D.E. 65 at 7]. Defendant counters by arguing that Plaintiff conceded she was given notice of the danger and Plaintiff was injured by doing what was warned against. [D.E. 62 at 10-12].

"Under Kentucky law, the duty to warn extends to the dangers likely to result from foreseeable misuse of a product." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 537 (6th Cir. 1995) (citations omitted). "[A] warning 'must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." *King v. Ford Motor Co.*, 209 F.3d 886, 895 (6th Cir. 2000) (quoting *Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky. 1968)).

>[E]ven if there is some word of caution, some mention of misuse in the directions, the question still

> remains whether this constituted an adequate warning. The issue is whether the totality of directions or cautionary language constituted an adequate warning in the light of the foreseeable use and user of the product.

Post, 437 S.W.2d at 521 (quoting Frumer-Friedman, Products Liability, § 8.05).

Plaintiff, relying on her expert's opinion, contends that the "warning label ignores that additional pinch points are exposed in the manual mode with the SPI switch on which are not exposed in semi-automatic mode with the SPI switch on." [D.E. 65 at 8]. Therefore, according to Plaintiff, "[t]he effect of such a general warning is to lull the user into a false sense of security, thus dulling their awareness of the additional risks exposed when the Molding Machine is operated in manual mode." [D.E. 65 at 9].

Plaintiff's argument ignores that the caution sticker warns of the dangers of pinch points irrespective of the mode in which the machine is being operated. Thus, the warning applies equally when the SPI safety override is in the "on" position and operated in semi-automatic as it does when the SPI safety override is in the "on" position and operated in manual. The warning is not inadequate simply because Plaintiff, by following Molding Solutions process sheet, routinely failed to heed the warning.

Plaintiff admitted to reading the warning sticker included on the machine, [D.E. 61-2 at 101-02], and further admitted that she understood the warning to mean that you should not put your hand in the machine while it was in use. [D.E. 61-2 at 55]. Plaintiff, by placing her hand in a pinch point with the operator gate down and the SPI safety override switch "on", was injured while doing exactly what the caution sticker, which Plaintiff admittedly read and understood, informed her not to do. Therefore, the warning adequately warned of the dangers of foreseeable misuse of the machine and summary judgment on Plaintiff's claim for failure to warn is appropriate.

Plaintiff also brings a claim that Defendant breached express and implied warranties "because the Machine was unsafe, not of merchantable quality, and not fit for its intended and foreseeable uses." [D.E. 1-1 at 4]. Plaintiff's claims for breach of express and implied warranty must fail because there is no privity between Defendant and Plaintiff's employer, Molding Solutions. *See Snawder v. Cohen*, 749 F. Supp. 1473, 1481 (W.D. Ky. 1990) (citing *Williams v. Fulmer*, 695 S.W.2d 411 (Ky. 1985)) ("Kentucky still requires privity where liability is predicated, not on ordinary negligence or strict liability, but on warranty."); *see also Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006) (citing *Williams v. Fulmer*, 695 S.W.2d at 413-14) ("Justice Leibson . . . left no doubt that privity

remains a prerequisite for products liability claims based on warranty. . . .").

It is undisputed that Defendant sold this machine to Parker Hannifin Corporation, who in turn sold the machine to Plaintiff's employer, Molding Solutions. [D.E. 60-1 at 3; 65 at 3]. Thus, there is no contractual relationship between Molding Solutions and Defendant, and Defendant made no express or implied warranties to Molding Solutions which may inure to Plaintiff. Thus, summary judgment must be granted in favor of Defendant on Plaintiff's claims for breach of express and implied warranty.

The Court having found that summary judgment is appropriate on all of Plaintiff's claims, summary judgment for Defendant against Sentry Insurance must also be granted. Sentry may only recover under KRS 342.700 if Defendant has legal liability for Plaintiff's damages. *See* KRS 342.700(1) ("If compensation is awarded under this chapter, the employer, [or] his insurance carrier . . . having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employee from the other person in whom legal liability for damages exists . . . ."). Therefore, because Defendant has no legal liability, Sentry may not recover.

Defendant argues that KRS 411.320(1) and (2) bar Plaintiff's claims in this case. [D.E. 60-1 at 13]. There are

conflicting opinions, in both Kentucky courts and federal courts, as to whether KRS 411.320 remains good law after the statutory adoption of comparative negligence. *Compare Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467, 474 (Ky. 2001) ("[KRS 411.182] repealed KRS 411.320(3). . . ."), *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 958 (Ky. 1999) ("We held in *Caterpillar* that this language impliedly repealed the contributory negligence provision in KRS 411.320(3)."), *Caterpillar, Inc. v. Brock*, 915 S.W.2d 751, 753 (Ky. 1996) ("Demonstratively, by implication, KRS 411.182(1) has repealed KRS 411.320(1)."), *Leslie v. Cincinnati Sub-Zero Prods., Inc.*, 961 S.W.2d 799, 804 (Ky. Ct. App. 1998) ("KRS 411.320(1) . . . was deemed to be repealed by the enactment of the comparative fault statute in *Caterpillar, Inc. v. Brock* . . . ."), *Shelter v. ALDI, Inc.*, No. 3:10-cv-778-JHM, 2012 WL 3264937, at *5 (W.D. Ky. Aug. 9, 2012) ("This Court finds the reasoning in *Caterpillar*, and the cases that followed, to be persuasive as to the intent of the Kentucky Legislature in enacting the comparative fault statute."), *and Low v. Power Tool Specialist, Inc.*, 803 F. Supp. 2d 655 (E.D. Ky. 2011) (finding that the Kentucky Supreme Court would find both KRS 411.320(1) and (2) repealed based upon the reasoning in *Caterpillar*), *with Monsanto Co. v. Reed*, 950 S.W.2d 811 (Ky. 1997) (applying KRS 411.320(1) and (2) to bar recovery by plaintiff), *Dailey v. Hoffman/New*

*Yorker, Inc.*, No. 09-cv-343-KSF, 2011 WL 5598908, (E.D. Ky. Nov. 17, 2011) (applying KRS 411.320 to find that the plaintiff's claims failed as a matter of law), *and Wells v. Portman Equip. Co.*, No. 5:05-cv-183-JMH, 2006 WL 3328160, at *2 (E.D. Ky. Nov. 15, 2006) ("Contrary to Plaintiff's assertions, KRS § 411.320(1) was neither negated nor overruled by KRS § 411.182(1)."). Irrespective of the application of KRS 411.320, and assuming Defendant was negligent, the Court finds that Defendant has shown the actions of Molding Solutions are a superseding cause. Therefore, the Court declines to further muddy the waters by expressing an opinion on the continued validity of KRS 411.320.

**IV. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Defendant Engel Canada, Inc.'s Motion for Summary Judgment [D.E. 60] be, and the same hereby is, **GRANTED**.

This the 22nd day of January, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

17